**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Donald Long, et al.,** | ) | **CASE NO.  1:04 CV 1322** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **Ford Motor Co., et al.,** | ) | **Memorandum of Opinion & Order** |
| | ) | |
| **Defendants.** | ) | |

**Introduction**

This matter is before the Court upon (1) defendants Ford Motor Company and Dominic Coletta's Motion for Summary Judgment as to plaintiff Manuel Pedro (Doc. 16), and (2) defendants' Motion for Summary Judgment as to plaintiff Donald Long (Doc. 17).   This is an employment discrimination action in which plaintiffs Donald Long and Manuel Pedro allege that defendants Ford Motor Company and Dominic Coletta's pattern and practice of racial and national origin harassment created a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., 42 U.S.C. § 1981 and Ohio Revised Code § 4112.02 *et seq*.  For the following reasons, the Court (1) grants defendants' Motion for Summary

1

Judgment with respect to plaintiff Donald Long and (2) grants defendants' Motion for Summary Judgment with respect to plaintiff Manuel Pedro.

**Facts**

Plaintiffs Donald Long and Manuel Pedro are long-time employees at defendant Ford Motor Company's Brook Site facility (hereinafter "the Facility") in Brook Park, Ohio.  The Facility consists of three different plants: Cleveland Engine Plant #1 ("CEP 1"), Cleveland Engine Plant #2 ("CEP 2"), and the Casting Plant.  Defendant Dominic Coletta is the manager of CEPs 1 and 2. (Long Depo. at 340).

Plaintiff Long, who is African-American, began his employment with defendant Ford in 1969.  (Long Depo. at 8-10).  From 1969 until 1994, he worked in various positions in CEPs 1 and 2 and the Casting Plant, including working in the cleaning room, the assembly line, and the stamping and ring gear areas.  (Long Depo. at 10- 14).  In 1994, plaintiff Long was transferred to CEP 2 and began working as a mechanic in the "Major Repair" department of the area where Jaguar engines are produced.  (Long Depo. at 15, 16, 26, 28).  Thereafter, in July 1994, plaintiff Long transferred to CEP 1 where he worked (and continues to work) as a mechanic on another new engine program. (Long Depo. at 16).

Plaintiff Pedro, who is Hispanic, has been employed with defendant Ford since January 2, 1973.  (Pedro Depo. at 11).  From 1973 until 1999, he worked first as a core setter in the Casting Plant and then as a Materials Handler in both the Casting Plant and CEPs 1 and 2.  (Pedro Depo. at 22 -23).  In 1999, plaintiff Pedro became a mechanic in the "Major Repair" department of the area where RFF and Jaguar engines are produced.  (Pedro Depo. at 25, 28).  Plaintiff Pedro continues to be employed by defendant Ford in this position. (Plaintiffs' Brief in Opp. at 1).

2

Plaintiffs' principal evidence in support of their hostile work environment claims consists of testimony regarding the prevalence of racial epithets and jokes in the workplace. Specifically, several of plaintiffs' co-workers testified to the frequent use of the "N" word and numerous derogatory terms aimed at Hispanics, including "wetback," and "spic." (H. Wright Depo. at 11-12; L. Finklea Depo. at 17-18; W. Jackson Depo. at 16, 28; R. Brown Depo. at 12). Plaintiff Pedro himself testified that the "N" word was used at the plant, and that he was called "wetback," "Puerto Rican spic," and "fat Puerto Rican." (Pedro Depo. at 40-41, 94). Another co-worker, Philip Matovich, testified that he heard other workers made racial jokes about plaintiff Long and heard Long referred to as a "black son of a bitch" and a "black bastard." (Matovich Depo. at 21).

Plaintiffs also cite generally to testimony from certain co-workers regarding incidents where these co-workers believed that they were treated less favorably that white employees. *See e.g.* H. Wright Depo. at 35-37 (testifying that a white employee with less seniority was awarded a job instead of him); R. Brown Depo. at 18, 23-24 (testifying that defendant worked her harder than white employees and gave a white employee with less seniority than Brown an easier job); T. Turner Depo. at 16, 21-29 (testified that he was moved to a different area when his machine broke down even though other employees were not moved, and that he was written up for misdiagnosing an engine even though he was not given any training). Plaintiff Pedro testified that he was bumped to a lower position even though he had more seniority than two white employees. (M. Pedro Depo. at 96).

Plaintiff Long testified regarding several particular incidents which he believes demonstrate racial harassment. Specifically, Long testified that, as a union coordinator for his department, he should have been paid for one extra hour of work per day. Although white

3

employees serving as union coordinators were paid one extra hour even on days when they did

not actually work an extra hour, plaintiff Long testified that he was not paid the one extra hour of

work per day.  (Long Depo. at 107-109).

In addition, plaintiff Long testified that he was subjected to constant harassment for

championing a grievance on behalf of the union regarding the distribution of work between his

department (Major Repair) and another department (Bay Repair).  (Long Depo. at 92-93, 173-

174).  He further explained that he was harassed because the work in his area was backed up.

(Long Depo. at 182-183).  In both instances, plaintiff Long alleges that the harassment of him

took the form of threats by management to hold hearings about him.  (Long Depo. at 192, 194,

210-215).  Finally, plaintiff Long testified that defendant's prejudice against him was

demonstrated by defendant's refusal to allow Long to use the telephone in a work area when

white employees were permitted to do so. (Long Depo. at 179-181).

On June 8, 2004, plaintiffs filed a one count Complaint against defendants Ford Motor

Company and Dominic Coletta in the Cuyahoga County Court of Common Pleas.  Defendants

thereafter filed a Notice of Removal to this Court on the basis of federal question jurisdiction,

which was not opposed.

Plaintiffs' Complaint contains one claim. This claim alleges a pattern and practice of

racial and national origin harassment as follows:

15.     Hostile environment was practiced by Defendants was directed [sic] to the
        Plaintiffs because of their race and national origin which included unwelcome
        comments, physical threats and conduct which unreasonably interfered with their
        work performance and created an intimidating hostile and offensive work
        environment.  The harassment was committed by both management employees
        and other employees who had a duty to stop and failed in that duty despite
        attempts by the Plaintiffs to bring it to their attention.  As a result, a pattern and

4

practice of discrimination and harassment was created and prevailed throughout the plant.

(Complt. at ¶ 15).  Plaintiffs allege that this conduct "is a discriminatory practice under Title VII, the Civil Rights Act of 1991, and the Ohio Revised Code 4112." (Complt. at ¶ 14).  Moreover, as a result of defendants' alleged discriminatory acts, plaintiffs allege that they "have suffered and continue to suffer physical harm, pain and suffering, mental and emotional distress and other damages to be addressed at trial." (Complt. at ¶ 12).

Defendants thereafter filed separate Motions for Summary Judgment as to plaintiffs Long and Pedro.  It is these Motions that are currently before the Court.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.  Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial.  If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

### Discussion

Although somewhat unclear, plaintiffs' Complaint appears to allege hostile environment claims under Title VII, 42 U.S.C. § 1981 and Ohio Revised Code Chapter 4112.  Defendants move for summary judgment with respect to each of these claims.  For reasons which will

6

become apparent, the Court will address plaintiffs' state and federal claims separately.

### I.      Federal Claims

Defendants argue that they are entitled to summary judgment in their favor with respect to plaintiffs' claims under Title VII and § 1981 for the following reasons.  First, defendants maintain that plaintiffs' Title VII claims must fail because neither plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") relevant to the instant suit.  Further, with respect to plaintiff Pedro, defendants further argue that Pedro's § 1981 claim must fail for the reason that national origin harassment is not actionable under that section.

Plaintiffs do not oppose defendants' arguments with respect to either their Title VII or § 1981 claims.

Federal courts have consistently held that the filing of a charge of discrimination with the EEOC is a mandatory prerequisite to the filing of a lawsuit under Title VII. *See Vinson v. Ford Motor Co.*, 806 F.2d 686, 688 (6th Cir.1986); *Rivers v. Barberton Bd. Of Educ.*, 143 F.3d 1029, 1032 (6th Cir.1998)(holding that right to sue letter is a condition precedent to filing claim); *Donahoo v. Ohio Dep't of Youth Servs.*, 237 F.Supp.2d 844, 861 (N.D. Ohio 2002).  According to these cases, a plaintiff may not bring suit on any claim of discrimination under Title VII until such time as they have received a right to sue letter from the EEOC. *See Parsons v. Yellow Freight System*, 741 F.2d 871, 873 (6th Cir.1984); *Donahoo*, 237 F.Supp.2d at 861.

In the instant case, neither plaintiff Long or Pedro present any evidence indicating that they filed charges of discrimination with the EEOC relevant to the instant suit.  In fact, to the contrary, plaintiffs both acknowledge in their Responses to defendants' Interrogatories that they, in fact, did not file any such EEOC charges. *See* Pedro's Responses to Defendants' Interrogatory

No. 2 (attached as Exh. C to Defendants' Motion for Summary Judgment as to Pedro); Long's

Responses to Defendants' Interrogatory No. 2 (attached as Exh. B to Defendants' Motion for

Summary Judgment as to Long).  Accordingly, the Court finds that defendants are entitled to

summary judgment in their favor to the extent plaintiffs are alleging claims under Title VII.

With respect to plaintiff Pedro's § 1981 claim, the Court agrees with defendants that they

are entitled to summary judgment in their favor with respect to this claim as a matter of law.  The

Sixth Circuit has held that "§1981 does not cover discrimination based solely on 'the place or

nation of [a plaintiff's] origin.'" *Boinapally v. University of Tennessee*, 23 Fed. Appx. 512 (6th

Cir. Dec. 11, 2001) (quoting *Ana Leon T. v. Fed. Reserve Bank*, 823 F.2d 928, 931 (6th Cir.

1987)).

Plaintiff Pedro's allegations of harassment are based entirely on the basis of national

origin.  *See* Brief in Opposition at 5 (alleging that Pedro was called a "wetback," "fat Puerto

Rican," "Puerto Rican spic," and "fucking Puerto Rican").  Moreover, plaintiff Pedro does not

oppose defendants' argument on this issue. Accordingly, the Court finds that defendants are

entitled to summary judgment in their favor with respect to plaintiff Pedro's claims under 42

U.S.C. § 1981.

With respect to plaintiff Long, defendants argue that his claim for relief under § 1981

should be dismissed as a result of his failure to file an EEOC charge because § 1981a provides

for damages against private defendants only after intentional violations of Title VII have been

proven. However, it is well-established that a § 1981 plaintiff need not exhaust EEOC remedies

before filing suit against an employer. *See e.g. Johnson v. Railway Express Agency, Inc.,* 421

U.S. 454, 460 (1975) (finding that "the filing of a Title VII charge and resort to Title VII's

8

administrative machinery are not prerequisites for the institution of a § 1981 action"); *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1203 (6th Cir. 1984); *Young v. Sabbatine*, 2000 WL 1888672 at * 3 (6th Cir. Dec. 19, 2000).

Accordingly, the Court rejects defendants' argument with respect to plaintiff's Long's §1981 claim and finds that this claim will be addressed on the merits.  However, as claims of discrimination under Title VII, § 1981 and Ohio Revised Code Chapter 4112 are all analyzed in the same manner, the Court will address plaintiff Long's §1981 claim together with its analysis of plaintiffs' hostile work environment claims under Ohio law.  *See Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 fn2  (6th Cir. 2000) (in a race discrimination case, holding that "the standards for Title VII are equally applicable to Dews' claims under 42 U.S.C. § 1981 and O.R.C. § 4112").

### II.      Hostile Work Environment, Ohio Rev. Code Chapter 4112

Ohio Revised Code § 4112.02(A) provides that:

It shall be an unlawful discriminatory practice:

(A) For any employer, because of the race, color, religion, sex, national origin, handicap, age or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

Ohio Rev. Code § 4112.02(A).  In determining the essential elements of a hostile work environment claim brought under the above statute, Ohio courts have looked to federal case law interpreting Title VII of the Civil Rights Act of 1964.  *See Bell v. Cuyahoga Community College*, 717 N.E.2d 1189, 1192 (Ohio Ct. App. 8th Dist. 1998); *Delaney v. Skyline Lodge, Inc.*, 642 N.E.2d 395, 399-400 (Ohio Ct. App. 1st  Dist. 1994); *Tamayo v. Stack Container Services*, 2004

9

WL 906215 at *5 (Ohio Ct. App. 8th Dist., April 29, 2004).

To establish a prima facie case of hostile work environment under Ohio Rev. Code § 4112.02, a plaintiff must show: (1) that he is a member of a protected class; (2) that he was subjected to unwelcome harassment; (3) that the harassment was based on his membership in a protected class; (4) that the harassment had the effect of unreasonably interfering with his work performance by creating an intimidating, hostile, or offensive work environment; and (5) the existence of employer liability. *See Bell*, 717 N.E.2d at 1192; *Jarvis v. The Gerstenslager Co.*, 2003 WL 21398473 at *6 (Ohio Ct. App. 9th Dist. June 18, 2003); *Courie v. Alcoa*, 2005 WL 1581103 at *4 (Ohio Ct. App. 8th Dist. July 7, 2005).  *See also Parks v. City of Chattanooga*,  74 Fed.Appx. 432, 440 (6th Cir. July 16, 2002) (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir.1999)).

In determining whether there was a hostile or abusive work environment, the court looks to the totality of the circumstances.  *Parks*, 74 Fed. Appx. at 440 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88, 118 S.Ct. 2275, 141 L.Ed.2d 662, (1998)). In particular, the court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.*  (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

Accordingly, harassment must be "'sufficiently severe or pervasive to alter the conditions of the victim's employment to create an abusive working environment.'"  *Harris*, 510 U.S. at 21 (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986)). *See also Broska v. Henderson,* 70 Fed. Appx. 262 (6th Cir. June 30, 2003); *Jarvis*, 2003 WL 21398473 at *8.

10

Moreover, the test "has both an objective and subjective component: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as hostile or abusive." *Broska,* 70 Fed. Appx. at 262. *See also Faragher*, 524 U.S. at 787.

Finally, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher,* 524 U.S. at 788.  *See also Hafford*, 183 F.3d at 512-513; *Jarvis*, 2003 WL 21398473 at *8.

As defendants have filed separate Motions for Summary Judgment as to each plaintiff, the Court will address plaintiff Pedro's and Long's claims individually.

### A.       Plaintiff Manuel Pedro

Defendants argue that plaintiff Pedro's hostile work environment claim fails because Pedro is unable to demonstrate (1) that he was subjected to unwanted harassment based on his national origin; (2) that the alleged harassment was sufficiently severe or pervasive; or (3) the existence of employer liability.

As plaintiffs' Brief in Opposition does not clearly distinguish between plaintiffs Pedro and Long, it is somewhat unclear which testimony and evidence is intended to support Pedro's (as opposed to Long's) claims.  However, it appears that Pedro is relying on the following testimony and evidence to create a genuine issue of material fact:

1.      Testimony by several of Pedro's co-workers regarding the allegedly frequent use of the "n" word and the prevalence of racial jokes in the workplace.  (H. Wright Depo. at 11-12; L. Finklea Depo. at 17-18; W. Jackson Depo. at 16; R. Brown Depo. at 12).

11

2.	Testimony by several of Pedro's co-workers regarding incidents where they believed that they were treated less favorably than white employees.  (H. Wright Depo. at 35-37; R. Brown Depo. at 18, 23-24; T. Turner Depo. at 16, 21-29).

3.	An incident in which Pedro heard someone say the "n" word in the workplace. (Pedro Depo. at 94).

4.	An incident when a co-worker named "Pat" called Pedro a "wetback," "Puerto Rican spic," and a "fat pig." (Pedro Depo. at 40-41).

5.	Another incident when "Pat" called Pedro a "fat Puerto Rican," "fat motherfucking Puerto Rican," and a "fucking Puerto Rican." During this incident, "Pat" also allegedly stated, in front of management personnel, that Ford "should never have brought that fat ass Puerto Rican over here." (Pedro Depo. at 40-44).

6.	An incident with a co-worker, John Arendash, in which Mr. Arendash said to Pedro: "You know what, you think you're a smart ass, don't you.  You fucking Puerto Rican. Think you're so smart, well, you know what, you're not and I'm going to kick your ass. And I'm going to show you who is bad around here.  You think you're a bad ass, I'm going to show you who's a bad ass.  Lets go outside." (Pedro Depo. at 111).

7.	An incident in which Pedro was bumped to a lower position, even though he had more seniority than two white employees.  (Pedro Depo. at 96).

(Brief in Opposition at 2-5).  Pedro testified that he reported the fifth item above to Labor Relations, but does not present any evidence that he reported item numbers three, four, six or seven.  (Pedro Depo. at 44).

As an initial matter, the Court finds that the first and second items above do not constitute actionable harassment.  As the Supreme Court has made clear, in order to prove that his workplace was hostile or abusive, a plaintiff must demonstrate that the conduct at issue was both objectively and **subjectively** offensive.  *Harris*, 510 U.S. at 21-22.  Under this test, "the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, **and the victim must subjectively regard that environment as hostile or**

12

**abusive**." *Broska,* 70 Fed. Appx. at 262 (emphasis added).  Interpreting this language, courts have held that discriminatory conduct against individuals other than the plaintiff, and of which plaintiff was not aware, are not relevant to that plaintiff's hostile work environment claim. *See e.g. Burnett v. Tyco Corp.*, 203 F.3d 980, 981 (6th Cir. 2000) (finding that evidence regarding harassing behavior directed toward other women in the workplace was not relevant to plaintiff's hostile work environment claim since that behavior was not directed to plaintiff and plaintiff was not aware of said behavior); *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 249 (6th Cir. 1998).

In the instant case, the first and second items above relate solely to harassing behavior allegedly experienced by co-workers, and not by plaintiff Pedro.  Pedro does not direct this Court's attention to any evidence that he was present when any of these incidents occurred or otherwise had knowledge of these incidents prior to the filing of the instant action.  Under these circumstances, the Court finds that the first and second items listed above are not relevant to plaintiff Pedro's hostile work environment claim.

Items three, four, five and six involve the use of derogatory epithets which were either directed specifically at plaintiff Pedro or of which he was aware.  Item number seven involves an incident in which Pedro believed that he himself was treated less favorably than white employees because of his national origin.  As such, these incidents are relevant to Pedro's hostile work environment claim.

Defendants argue that the above conduct is not sufficiently severe or pervasive, relying principally on the Sixth Circuit cases of *Smith v. Leggett Wire Co.*, 220 F.3d 752 (6th Cir. 2000), *Durham v. R.R. Donnelly & Sons Co.*, 1999 WL 551342 (6th Cir. July 19, 1999), and *Sweezer v.*

*Michigan Department of Corrections*, 2000 WL 1175644 (6th Cir. Aug. 11, 2000).  Defendants assert that while these cases involved conduct of a more serious nature, they were nonetheless dismissed.

In *Smith,* plaintiff was employed by defendant from 1974 until his termination in 1994. Plaintiff testified that on his first day of work in 1974, an unknown coworker threatened him, stating: "You're [sic] nigger ass ain't going to work here." *Smith*, 220 F.3d at 757.  Plaintiff also testified that on one occasion in the late 1980's or early 1990's, his supervisor circulated a racially discriminatory and lewd cartoon around the plant which depicted an African-American man with a rope around his neck and connected to his penis standing in front of a Caucasian woman. *Id*. The cartoon was entitled "How a Black Man Commits Suicide."  *Id*. Sometime after 1993, plaintiff heard his supervisor telling a "nigger" joke. *Id*. The supervisor admitted using the term. *Id.* Plaintiff testified also that sometime in the 1990's he heard a foreman referring to a black employee as a "gorilla."  *Id*.  Based on the above, the Sixth Circuit concluded that the "handful of discriminatory comments" over a twenty-year span of time, "is simply not severe or pervasive enough to create an objectively hostile work environment." *Id*. at 760.

In *Durham*, plaintiff asserted that a supervisor made three racially charged statements during the course of his seven-year employment: (1) we whites brought you over on the ship, fed you, clothed you, housed you, why complain now; (2) plaintiff was ignorant of operations and should not try to advance himself; and (3) plaintiff should not make everything a black and white issue.  *Id*. at * 9. The Sixth Circuit determined that the statements did not support a finding of a hostile work environment because they were isolated incidents and not of the extreme nature required by case law. *Id*.

14

In *Sweezer*, the plaintiff, an African-American woman, alleged a number of instances of racially discriminatory conduct over a period of several months.  Specifically, plaintiff asserted (among other things) that (1) another employee announced loudly in plaintiff's presence "Hey, there's a new colored woman in town;" (2) co-workers called her "nigger" and "bitch;" (3) a deputy warden stated that "if affirmative action was not passed, whites would not hire minorities;" (4) a co-worker blocked her in the parking lot and spat at her; (5) plaintiff found in her work mailbox copies of two racially degrading documents; (6) a deputy warden stated that plaintiff was "homogenous" with the inmates; and (7) comments were made that blacks were different than whites, and that an employee was late because she was Mexican.  *Sweezer*, 2000 WL 1175644 at ** 5-6.   Based on the above, the Sixth Circuit affirmed summary judgment for the defendant on the grounds that "a reasonable person in [plaintiff's] shoes could not conclude that the race-based incidents, caused by either co-workers or supervisors, were sufficiently severe or pervasive to create an intolerable working environment."  *Id*. at ** 6.

In the instant case, plaintiff Pedro alleges four instances when derogatory terms relating to either race or national origin were directed towards him or were made in his presence.  Pedro does not introduce any evidence regarding the specific time frame over which these events occurred.  However, he does argue in his Brief in Opposition that he "was constantly harassed because of his national origin as a major repair mechanic." (Brief in Opp. at 5).  As set forth above, Pedro became a major repair mechanic in 1999. (Pedro Depo. at 25, 28).   Moreover, in item seven (above), Pedro alleges that he was "illegally bumped" to a lower position, even though he had more seniority than two white employees, and that this occurred two years ago. (Pedro Depo. at 95-96).

15

The Court finds that plaintiff Pedro has failed to demonstrate that an issue of fact exists as to whether the above conduct is sufficiently severe or pervasive to alter the conditions of his employment at defendant Ford.  Construing the evidence most favorably towards plaintiff, Pedro has alleged five incidents over a period of more than five years.[1]  While the Court certainly does not condone the above behavior and finds the remarks at issue to be highly insulting and demeaning, the conduct described above is simply not severe or pervasive enough to create a genuine issue of material fact regarding the existence of a hostile work environment.

Accordingly, the Court grants summary judgment in defendant Ford's favor with respect to plaintiff Pedro's hostile work environment claim under Ohio Revised Code Chapter 4112.

Defendants also move for summary judgment in their favor with respect to plaintiff Pedro's hostile work environment claim against defendant Dominic Coletta.  Defendant Coletta

---

[1]    In their Motion, defendants also rely on five other instances of alleged hostility: (1) the denial of overtime one weekend to plaintiff Pedro's group; (2) the fact that Pedro's department, Major Repair, shared a coordinator with another department for some time; (3) the allegedly dangerous placement of rack engines between the Major Repair and Bay Repair areas; (4) the allegation that Pedro's supervisor closely monitored his group's work; and (5) the fact that a new machine for diagnosing engines was not installed until after Pedro was transferred. These instances are largely drawn from plaintiff Pedro's deposition testimony. However, Pedro does not rely on any of these alleged incidents in his Brief in Opposition. Defendants allege that the first, second, third, and fourth incidents do not constitute actionable harassment because the conduct was directed towards Pedro's department as a whole, which includes white, African-American and Hispanic individuals.  Moreover, defendants allege that the fifth incident, even when viewed in combination with the evidence discussed at length in the text above, is not sufficiently severe or pervasive to constitute a hostile work environment.  Plaintiffs do not oppose any of these arguments.  The Court agrees with defendants that the conduct described in this footnote, even if considered in combination with the conduct relied upon by Pedro and described in the text above, is not sufficiently severe or pervasive to create a genuine issue of material fact regarding the existence of a hostile work environment.

16

is sued in his individual capacity as manager of CEPs 1 and 2.

Plaintiffs allege generally that Coletta "is in fact a manager who failed to do anything about the rampant discrimination which took place and continues to do so in his plant, especially after it was brought to his attention." (Brief in Opposition at 7).

The Court rejects this argument. As defendants note, Pedro testified that he has spoken to Coletta on three occasions, when he was having a problem with supervisor Bill Johnson and believed that Labor Relations was not dealing with the issue appropriately. (Pedro Depo. at 12-20). Pedro testified that, after these conversations, the issue was resolved to Pedro's satisfaction and he has not spoken with Coletta since. (Pedro Depo. at 20). Moreover, Pedro specifically testified that Coletta has never done anything that Pedro perceived as harassing or discriminatory. (Pedro Depo. at 21).

Based on the above testimony, the Court finds that plaintiffs have failed to come forward with any evidence indicating either that Coletta personally engaged in discriminatory or harassing conduct, or that he was specifically aware of such conduct as regards to Pedro and failed to take appropriate action. Accordingly, the Court grants summary judgment in defendant Coletta's favor with respect to plaintiff Pedro's hostile work environment claim under Ohio Revised Code Chapter 4112.

### B.    Plaintiff Donald Long

Defendants argue that plaintiff Long's hostile work environment claim fails because Long is unable to demonstrate (1) that he was subjected to unwanted harassment based on his race; and (2) that the alleged harassment was sufficiently severe or pervasive.

Based on plaintiffs' Brief in Opposition, it appears that Long is relying on the following

17

testimony and evidence to create a genuine issue of material fact:

1.  Testimony by several of Long's co-workers regarding the allegedly frequent use of the "n" word and the prevalence of racial jokes in the workplace.  (H. Wright Depo. at 11-12; L. Finklea Depo. at 17-18; W. Jackson Depo. at 16; R. Brown Depo. at 12; Pedro Depo. at 40-44, 94, 111).

2.  Testimony by several of Long's co-workers regarding incidents where they believed that they were treated less favorably than white employees.  (H. Wright Depo. at 35-37; R. Brown Depo. at 18, 23-24; T. Turner Depo. at 16, 21-29; Pedro Depo. at 96).

3.  Testimony by Long's co-worker, Theodis Turner, regarding Turner's observation that Long was moved to another position even though he (Long) had more seniority than the person who should have been moved. (Turner Depo. at 14-15).

4.  Testimony by Long's co-worker, Philip Matovich, that (a) workers made racial jokes in front of supervisors pertaining to Long; (b) Long was called a "black son of a bitch" and a "black bastard;" (c) Long was threatened with physical violence; and (d) Long was always "given a hard time" when he came into the work area. (Matovich Depo. at 21-22, 29).

5.  Testimony by Long that, as a union coordinator, he should have been paid for an extra hour of work each day, but that he was not so paid even though white union coordinators were paid an extra hour.  (Long Depo. at 107-109).

6.  Testimony by Long that he was harassed for championing a grievance regarding the distribution of work between his department (Major Repair) and another department (Bay Repair).  (Long Depo. at 92-93, 173-174).

7.  Testimony by Long that he was not permitted to use the telephone in a work area when white employees were permitted to do so.  (Long Depo. at 179-181).

8.  Testimony by Long that he was constantly harassed because the work in his area was backed up, even though the one white mechanic in the department was not harassed. (Long Depo. at 182-183).

9.  Testimony by Long that he was "constantly harassed" by management with threats to hold hearings. (Long Depo. at 192, 194, 210-215).

(Brief in Opposition at pp. 2-5).

As an initial matter, the Court finds that the first and second items above do not constitute

18

actionable harassment.  As was the case with plaintiff Pedro, this testimony relates solely to

harassing behavior allegedly experienced by co-workers, and not by plaintiff Long.  Long does

not direct this Court's attention to any evidence that he was present when any of these incidents

occurred or otherwise had knowledge of these incidents prior to the filing of the instant action.

Under these circumstances, and for the reasons set forth in Section II.A of this Memorandum of

Opinion & Order, the Court finds that the first and second items listed above are not relevant to

plaintiff Long's hostile work environment claim.

　　　　With regard to items five through nine, the Court agrees with defendants that plaintiff

Long has failed to come forward with any evidence that these incidents were motivated because

of Long's race.  Specifically, with regard to item five, Long testified that union coordinators are

generally paid for an additional hour of work than the rest of their team, even though most

coordinators leave with their teams and do not actually work an additional hour. (Long Depo. at

109-110).  Long claims that, when he was a union coordinator for the Major Repair department,

defendants discriminated against him by failing to pay him for an additional hour of work, even

though he did not actually work that additional hour. (Long Depo. at 107-110).

　　　　However, as defendants correctly note, Long has no evidence (other than his own

subjective belief) that other coordinators were, in fact, able to leave with their team and were

nonetheless paid for the extra hour. (Long Depo. at 116-119).  Moreover, Long points to no

specific evidence that he was not paid for an extra hour of work because of his race.  (Long

Depo. at 121-122).  Indeed, at least one of the coordinators that Long believes left early but was

paid (Al Johnson) is African-American.  (Long Depo. at 84, 111, 114, 116-117).  Accordingly,

the Court finds that this incident does not create a genuine issue of material fact regarding the

existence of a hostile working environment.

With regard to item six, Long testified regarding an incident in which his supervisor (Kevin Heck) decided to redirect work from Long's department (Major Repair) to the Bay Repair department, because Major Repair was extremely busy and working overtime while Bay Repair was not very busy.  (Long Depo. at 76-81).  Long testified that he believed it was wrong to allow Bay Repair to do Major Repair's work and to cut Major Repair's overtime, and he filed a grievance. (Long Depo. at 78-79).   However, Long is unable to point to any evidence that he was subjected to racial harassment for championing this grievance:

> Q:    With regard to the issue with the engines in the oil in it and the fact that they had . . . Bay Repair doing that, what did that have to do with race, if anything?
>
> A:    I wouldn't say it did, however, I'll venture to say this, because I spearheaded this thing, okay, and I kept it going, I didn't let up, I didn't give– I didn't give into it like they wanted me to, I felt that I received the brunt of the harassment and the abuse because of it.
>
> Q:    Because you were the leader, the coordinator.
>
> A:    Right.
>
> Q:    And that's why you received that harassment, is that correct?
>
> A:    That's what I think, yeah.
>
> Q:    And the effect though affected everyone in the mechanics, is that correct?
>
> A:    It —right, it affect--
>
> Q:    All of them?
>
> A:    --all the mechanics.
>
> Q:    Black, white, didn't matter.
>
> A:    Right.

20

(Long Depo. at 92-93).

Based on the above testimony, the Court finds that this incident does not constitute actionable harassment.  As set forth above, in order to demonstrate a hostile work environment, plaintiff Long must demonstrate that the harassment was based on race, not on his position as a union representative. *See Schramm v. Slater*, 105 Fed. Appx. 34 (6th Cir. 2004) (stating that "nothing in this account suggests that Plaintiff was harassed due to his sex; rather, from this account it appears that Plaintiff's role as a facility representative helped precipitate the conflict").  Moreover, a plaintiff's unsupported subjective belief that conduct was motivated by race is not sufficient to withstand a motion for summary judgment.  *See e.g. Hollowell v. Society Bank & Trust*, 605 N.E.2d 594 (Ohio Ct. App. 6th  Dist. 1992); *Locke v. Commercial Union Ins.*, 676 F.2d 205, 206 (6th Cir. 1982).  Accordingly, the Court finds that this incident does not create a genuine issue of material fact regarding the existence of a hostile working environment.

With regard to item seven, Long testified that, on one occasion in 2003, he used the telephone in the engineer's office to speak with his wife regarding a prescription that she needed. As he was leaving, his supervisor (Mike Stepanik) approached him and asked him not to go into the office and use the phone anymore. (Long Depo. at 175-177).  Long asserts that this constitutes discriminatory conduct because other white employees regularly use the office phone. However, Long specifically testified that some of the other employees who regularly used the phone included two women who were both African-American. (Long Depo. at 180-181). Moreover, Long specifically testified that he has no evidence that this incident was motivated in any way because of race:

Q:      So again, I ask you why race?  Why do you believe race was involved, given the

21

fact that at least two of the females – two of the people were black females, so they obviously weren't keeping blacks from using it.

A:    Well, let's put it this way: Those people wasn't having a problem with management, okay? They– these are totally two different situations.

* * *

Q:    Well, it obviously wasn't because you're black.

A:    Could have been. Could very well have been. You don't know that.

Q:    You don't know that it was, do you?

A:    You don't know that it wasn't.

[Plaintiff's counsel]: Just answer the question. If you don't know, say "I don't know."

Q:    Do you know whether it was?

A:    No, I don't know.

(Long Depo. at 182).  Based on the above, the Court finds that this incident does not create a genuine issue of material fact regarding the existence of a hostile working environment.

With regard to item eight, Long testified that he was "constantly harassed" by manager Andy Centlivre because Mr. Centlivre attempted to discuss with him the fact that engines in his department had become backed up while several of Long's co-workers were out on medical leave. (Long Depo. at  127-160). When Centlivre attempted to speak to Long about this issue, Long refused to talk to him and left the floor to find his union representative.  (Long Depo. at 140-141). Long thereafter met with management and union representatives to discuss the incident. (Long Depo. at 145, 150-152).  Long testified that he was told to communicate with Centlivre and a plan was put into effect to reduce the number of backed up engines.  (Long Depo.

22

at 152, 160).

After reviewing Long's deposition testimony, it is apparent that Long has no evidence to suggest that this incident had anything to do with Long's race. By his own testimony, the engines in Long's department were extremely backed up. Given these circumstances, it is not unreasonable that management wished to discuss the situation with him, nor it is unreasonable that management became upset when Long refused to do so.  As there is no indication in the record that this incident was motivated by racial animus, the Court finds that this incident does not create a genuine issue of material fact regarding the existence of a hostile working environment.

With regard to item nine, Long argues that he was "constantly harassed" by management threats to hold hearings about him.  Long does not provide any further elaboration of this argument, other than to cite several pages of deposition testimony.  (Long Depo. at 192, 194, 210-215).  This deposition testimony involved two incidents.  In the first incident, Long was working on a weekend, claimed he didn't know how to start the assembly line, and was later cited by his weekend supervisor for being disrespectful.  (Long Depo. at 188-194). In the second incident, Long felt ill at work but was told he could not leave as two other people had already left the shift.  (Long Depo. at 210-215). Long left anyway, without telling his supervisor that he was doing so. (Long Depo. at 210-215).  His supervisor believed that Long should be disciplined and a hearing held.  (Long Depo. at 212-216). No hearing was held.  (Long Depo. at 216).

There is no evidence to suggest that either of these incidents were motivated by racial animus and, in fact, Long points to none.  As such, the Court finds that this incident does not create a genuine issue of material fact regarding the existence of a hostile working environment.

This leaves items two and three, involving the testimony of Long's co-workers Theodis Turner and Philip Matovich. As set forth above, Mr. Turner testified that he believed Long was moved to another position even though Long had more seniority than the person who should have been moved. (Turner Depo. at 14-15).  Mr. Matovich testified that (a) workers made racial jokes in front of supervisors pertaining to Long; (b) Long was called a "black son of a bitch" and a "black bastard;" (c) Long was threatened with physical violence; and (d) Long was always "given a hard time" when he came into the work area.  (Matovich Depo. at 21-22, 29). Assuming arguendo that Long was aware of these incidents, the Court finds that these incidents are relevant to Long's hostile work environment claim.  Both of these matters directly involve plaintiff Long and, at least with regard to Mr. Matovich's testimony, have racial overtones.

Defendants argue that the above conduct is not sufficiently severe or pervasive to create a genuine issue of fact regarding the existence of a hostile work environment claim.  The Court agrees.  Long does not introduce any evidence regarding the specific time frame over which these events occurred.  However, as all of the specific incidents above occurred during the time when Long was employed in Major Repair, it is reasonable to assume that Long is alleging a hostile work environment during the time he worked in this department. As set forth above, Long began working in the Major Repair department in 1994. (Long Depo. at 15, 16, 24, 28).

Construing the evidence most favorably towards plaintiff, Long has alleged approximately five incidents over a period of over ten years.[2]  While the use of racial epithets,

---

[2]    In their Motion, defendants also rely on four other instances of alleged hostility: (1) the reluctance of management to allow Major Repair to have its own union coordinator; (2) the fact that Long's pay was docked on several different occasions by several different supervisors; (3) a comment by a supervisor that Long was not "breaking a sweat;" and (4) Long's allegation that somebody tried

24

jokes and threats are certainly deplorable, they are simply not severe or pervasive enough in the case of plaintiff Long to satisfy the test for establishing a hostile work environment claim under the precedent discussed *supra* in Section II.A of this Memorandum of Opinion & Order. Accordingly, the Court grants summary judgment in defendant Ford's favor with respect to plaintiff Long's hostile work environment claim under Ohio Revised Code Chapter 4112 and 42 U.S.C. § 1981.

Defendants also move for summary judgment in their favor with respect to plaintiff Long's hostile work environment claim against defendant Dominic Coletta.  As set forth *supra*, plaintiffs allege generally that Coletta "is in fact a manager who failed to do anything about the rampant discrimination which took place and continues to do so in his plant, especially after it was brought to his attention."  (Brief in Opposition at 7).

The Court rejects plaintiffs' argument. As defendants note, Long testified that he only spoke to Coletta on one occasion, during which Long introduced himself and said that he wanted to come to Coletta's office to discuss some things. (Long Depo. at 340-342).   Long testified that Coletta said "okay, sure" but that Long never did go to Coletta's office and, in fact, never spoke to him again.  (Long Depo. at 341-342).  Long further acknowledged that Coletta never took any actions that he believed to be racially discriminatory or harassing. (Long Depo. at 342).

_____

to sabotage his work by putting a piece of rubber in the engine he was working on. These instances are largely drawn from plaintiff Long's deposition testimony. However, Long does not rely on any of these alleged incidents in his Brief in Opposition. Defendants allege that these incidents do not constitute actionable harassment because the conduct was not motivated by racial animus.  After reviewing the relevant deposition testimony, the Court agrees with defendants and finds that the conduct described in this footnote is not sufficient to create a genuine issue of material fact regarding the existence of a hostile work environment.

Based on the above testimony, the Court finds that plaintiffs have failed to come forward with any evidence indicating either that Coletta personally engaged in discriminatory or harassing conduct, or that he was specifically aware of such conduct as regards Long and failed to take appropriate action.  Accordingly, the Court grants summary judgment in defendant Coletta's favor with respect to plaintiff Long's hostile work environment claim under Ohio Revised Code Chapter 4112 and 42 U.S.C. § 1981.

### III.    Intentional Infliction of Emotional Distress

In their Brief in Opposition, plaintiffs argue that they have stated a claim for intentional infliction of emotional distress, relying on doctor's reports indicating that plaintiffs are suffering from stress and anxiety.  (See Exh. 10 to plaintiffs' Brief in Opposition).

Defendants respond by stating that plaintiffs may not pursue a claim for intentional infliction of emotional distress because this claim is not alleged in the Complaint. In addition, defendants argue that the doctor's reports attached to plaintiffs' Brief in Opposition should not be considered by this Court because they are not authenticated by, and attached to, an affidavit.

The Ohio Supreme Court adopted the Restatement approach and first recognized a cause of action for intentional infliction of emotional distress in *Yeager v. Local Union 20*, 453 N.E.2d 666, 670-671 (Ohio 1983).  Under Ohio law, in a case for intentional infliction of emotional distress, a plaintiff must prove (1) that the defendant intended to cause the plaintiff serious emotional distress; (2) that the defendant's conduct was extreme and outrageous; and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress.  *Phung v. Waste Management, Inc.*, 644 N.E.2d 286, 289 (Ohio 1994).   Moreover, the Ohio Supreme Court has held that a plaintiff may establish such a tort only if "the conduct has been so

26

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager*, 453 N.E.2d at 671.  *See also Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999).

Assuming that plaintiffs' Complaint states a cause of action for intentional infliction, the Court finds that defendants are entitled to summary judgment in their favor with respect to this claim.  While the conduct alleged was insulting and inappropriate, the Court finds that it is not "so extreme in degree, as to go beyond all possible bounds of decency."  *Yeager*, 453 N.E.2d at 671.

Accordingly, the Court grants summary judgment in defendants' favor on plaintiffs' intentional infliction of emotional distress claims.

### Conclusion

For the reasons set forth above, the Court grants summary judgment in defendant Ford Motor Company and Dominic Coletta's favor on plaintiffs' hostile work environment and intentional infliction of emotional distress claims.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 8/11/05


27